IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REBECCA CHAVEZ,

    Plaintiff,

v.                                                                                  CIV. 11-467 GBW

SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand the Administrative Decision. *Docs. 18, 19.* The Motion is fully briefed and the Court is fully advised. *Docs. 20, 21, 22.* The Court will grant Plaintiff's Motion, and remand this matter to the agency.

## *Background*

Plaintiff, Rebecca Chavez, claims that she has been disabled since November 26, 2007. *Doc. 19* at 2. Specifically, Plaintiff contends that she suffers from diabetes mellitus, obesity, osteoarthritis, organic mental disorder, mood disorder, and anxiety disorder. *Id.* Upon consideration of Plaintiff's initial claim for disability benefits, the Administrative Law Judge ("ALJ") agreed that Plaintiff had diabetes mellitus, obesity,

and osteoarthritis, but rejected, in part, the remaining alleged conditions. *See id.*; *see generally* Tr. at 23-36.[1]

Plaintiff submitted an assortment of documents to the ALJ in support of her claims, including a letter and two questionnaires from Plaintiff's therapist, Suzanne Chavez.[2] *See id.* at 386-98, 436-43. At their most significant points, the questionnaires detailed various difficulties that Plaintiff has relevant to pursuing work in the national economy. *See id.* at 396-98, 441-43

On September 1, 2009, Plaintiff and her Counsel appeared for a hearing on her disability claims before the ALJ. *See id.* at 37. At that hearing, Plaintiff answered questions put to her by both her attorney and the ALJ. *Id.* at 39-67. Following Plaintiff's testimony, the ALJ solicited testimony from Pamela Bowman, a vocational expert ("the VE"). *See id.* at 66. The VE affirmed that she had reviewed the relevant regulations and Plaintiff's history and testimony. *Id.* In light of that review, the ALJ asked the VE about a hypothetical individual's ability to work. *Id.* at 68. Specifically the ALJ asked whether "a hypothetical individual . . . limited to light, exertional-level work as that term is defined within the applicable rulings and regulations and . . . further limited to unskilled work involving simple tasks and working primarily with things rather than

---

[1] Citations to "Tr." refer to the Transcript or Administrative Record filed with this Court in this matter. *See* docs. 11, 12.

[2] In a coincidence that can cause much confusion, the therapist at the heart of the instant dispute, Sandra Chavez, has the same last name as Plaintiff, Rebecca Chavez. To avoid confusion, the Court refers to Plaintiff only as "Plaintiff" and to Sandra Chavez by her first and last name throughout.

with people" would have jobs available to them in the national economy. *Id.* The VE replied that such an individual would have jobs available to them. *Id.* at 68-69. The ALJ further narrowed the hypothetical to include the same individual, but with only occasional interaction with the public or co-workers. *Id.* at 69-70. The VE responded that such an individual would still have employment opportunities. *Id.* at 70.

Plaintiff's counsel followed up on the ALJ's questions. *Id.* at 71. Counsel inquired, "If someone had the impairment in concentration and attention such that, and I think she testified with reading only about five or ten minutes, give her the benefit of the doubt and say ability to maintain focus on a task for a maximum of fifteen minutes at a time, would they be able to perform any of these jobs?" *Id.* After some additional clarification, the ALJ rephrased counsel's question to the VE as such: "[I]f a person were able to perform these jobs and be able to essentially carry out their duties for only ten to fifteen minutes at a time before having either to take a break or simply stop performing duties, would that be tolerated at any of these kind of jobs?" *Id.* at 73. The VE responded that such "would not be tolerated in gainful employment." *Id*.

On December 22, 2009, the ALJ issued a decision in which he determined that Plaintiff was not disabled and, therefore, not entitled to disability benefits. *See generally* Tr. at 23-36. In reaching that decision the ALJ followed a five-step analysis set out by the Social Security Administration. *Id.* at 24-25. At step one, the ALJ determined that Plaintiff was not presently involved in gainful employment. *See id.* at 25. At step two,

the ALJ found that Plaintiff had only the severe impairments of diabetes mellitus, obesity, osteoarthritis, depression, and substance abuse disorders. *See id.* at 25-29. Moreover, the ALJ stated that Plaintiff's doctor noted that Plaintiff had "moderate limitations on the ability to . . . attend and concentrate . . . ." *Id.* at 29. The ALJ did not, however, find that Plaintiff suffered from post-traumatic stress disorder or an organic mental disorder as Plaintiff contended. *See id.* at 25-29. At step three, the ALJ found that Plaintiff's impairments did not meet any disability "listing" as set forth by the Social Security Administration. *See id.* at 29-31. After determining that Plaintiff was able to perform "light work", (*id.* at 31-34), the ALJ proceeded to find at step four that Plaintiff was presently unable to perform her past work experience (*id.* at 34). Finally, at step five, the ALJ found that Plaintiff's ability to do "light work" meant that there was substantial opportunity for gainful employment available to Plaintiff. *See id.* at 34-35. As such, the ALJ found that Plaintiff did not suffer from a disability. *Id.* at 35.

Plaintiff filed an appeal as to the ALJ's findings at steps two, three, and five. Tr. at 6-19. The Appeals Council rejected the appeal on April 20, 2011. *Id.* at 1-3. Plaintiff then filed suit in this Court on June 2, 2011.[3] *Doc. 1.* In line with the briefing schedule issued by this Court, (*doc. 13*), Plaintiff moved the Court to remand this matter back to the Agency, (*docs. 18, 19*). Defendant filed a response on February 24, 2012. *Doc. 20.* Plaintiff filed her reply on March 13, 2012. *Doc. 21.*

---

[3] In a subsequent decision, Plaintiff was found to be disabled as of December 23, 2009. *Doc. 18* at 1. As a result, Plaintiff seeks recovery only for the period of November 26, 2007 to December 22, 2009.

4

## *Analysis*

### *Legal Standards*

"Any individual, after any final decision of the Commissioner . . . may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g). In ruling on a challenge to the decision of the Commissioner, this Court has the "power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." *Id.*

The district court will not retry a Plaintiff's claim, but rather will "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also* 42 U.S.C. § 405(g).

Specifically, the ALJ is charged with making credibility determinations to reach his decisions in the five-step process. *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011). The Court "will not upset [credibility] determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Id.* (internal quotations and brackets omitted). Evidence is substantial when it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation omitted).

*The Decision Making Process*

A person is disabled if she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (quoting 42 U.S.C. § 423(d)).  To determine whether an individual is disabled, "[t]he Social Security Administration employs an oft-repeated five-part sequential evaluation process . . . ."  *Id.* (citing 20 C.F.R. § 404).

> Step one requires a claimant to establish she is not engaged in "substantial gainful activity."  *See* 20 C.F.R. §§ 404.1520(b), 404.1572.  Step two requires the claimant to establish she has a "medically severe impairment or combination of impairments."  *See id.* §§ 404.1520(c), 404.1520a-404.1523.  Step three asks whether any "medically severe impairment," alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude "substantial gainful employment."  *See id.* §§ 404.1525-404.1526 & pt. 404, subpt. P, App. 1.  If listed, the impairment is conclusively presumed disabling.  *See id.* § 404.1520(d).  If unlisted, the claimant must establish at step four that her impairment prevents her from performing work she has previously performed.  *See id.* § 404.1520(e), (f).  If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience.  *See id.* § 404.1520(g).

*Id.*; s*ee also Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (noting that at step five Commissioner bears burden).

6

*Evaluating Opinion Evidence*

One possible source of opinions regarding disabilities is a "treating source." *See* 20 C.F.R. § 416.902. A "treating source" is defined as a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id*. However, to fall within this category, the individual providing treatment must be an "acceptable medical source." *See Conger v. Astrue*, 453 Fed. App'x 821, 824 (10th Cir. 2011). There are only five "acceptable medical sources": licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). An individual who provides treatment but is not an "acceptable medical source" is considered an "other source" pursuant to 20 C.F.R. § 416.913(d). *See Conger*, 453 Fed. App'x at 824. An "other source" may not testify to the existence of a condition, but may still provide support for the severity of a condition. *See id.* (noting that "other source" opinions can "be considered to show the severity of a claimant's impairment and how it affects h[er] ability to work").

The Social Security Administration has established certain factors to be considered when evaluating opinion evidence. *See generally* SSR 06-03p, 2006 SSR LEXIS 5. "Although th[ose] factors . . . explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' th[o]se same factors can be applied to

7

opinion evidence from 'other sources.'" *Id.* at *10-11. The factors for evaluating "other source" evidence include:

> (1) the length of time the source has known the claimant and how frequently the source has seen the claimant; (2) the consistency of his opinion with other evidence; (3) whether there is . . . relevant evidence to support the opinion; (4) how well the opinion is explained; (5) the source's qualifications; and (6) any other factors that tend to support or detract from the opinion.

*Conger*, 453 Fed. App'x at 824 (citing *id.* at *11).

The ALJ must consider the opinions offered by any "other sources" in reaching a decision. *Id.* at 825 (10th Cir. 2011) (noting that ALJ "need only have considered [an] opinion of a non-medical other source). Despite the requirement of consideration, however, the ALJ does not have to explain his reasons for rejecting "other source" information within a final decision. *See id.* ("[T]he ALJ did not have to explain the reasons for the weight he gave [the other source], although he did so; instead he need only have considered the opinion . . . .").

<u>Application to the ALJ's Ruling</u>

Because the sides clash as to steps two, three, and five of the sequential analysis, the Court will address these steps in turn.

*Step Two*

At the second step of an ALJ's analysis, the ALJ must determine whether the claimant has established that she has a "medically severe impairment or combination of

impairments."[4]  *See id.* 20 C.F.R. §§ 404.1520(c), 404.1520a-404.1523.  Even if an ALJ errs at step two of the evaluation process, the error will be rendered harmless if the ALJ proceeds to consider steps three through five.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ . . . proceeded to the next step of the evaluation sequence.").

Despite reaching a decision adverse to Plaintiff at step two, the ALJ still provided an exhaustive discussion of all five steps of the evaluation process.  Thus, even if the ALJ erred at step two, the error was rendered harmless.  As such, the Court need not consider the objections to step two any further.

*Step Three*

The Social Security Administration has established a list of impairments so severe that they preclude "substantial gainful employment."  If a claimant has an impairment or combination of impairments which is equivalent to any of the listed impairments, the claimant is conclusively presumed to be disabled.  At step three, the ALJ must make this determination.   If the claimant does not meet or exceed the requirements for a listed impairment, the ALJ will then consider step four.  *Id.*

Plaintiff argues that her impairments meet three different disability listings and that the ALJ erred in not so finding.  *Doc. 19* at 9-16.  First, Plaintiff points to listing 12.02 which deals with organic mental disorders.  *Id*.  This listing requires a history and

---

[4] The parties do not dispute the ALJ's finding at Step One that Plaintiff is "not engaged in substantial gainful activity".  *Compare* Tr. at 25 *with doc. 19* at 7.  As such, the Court does not review this step.

9

physical examination or laboratory tests that demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities. 20 C.F.R. pt. 404, Subpt. P, app. 1 § 12.02. Plaintiff cites no evidence that would satisfy this requirement. Instead, Plaintiff relies exclusively on the opinion of her therapist, Sandra Chavez. *Doc. 19* at 14. Plaintiff does not appear to dispute that Sandra Chavez is not an "acceptable medical source" as defined above, and certainly provides no evidence that she is.[5] *See e.g. doc. 21* at 3. As such, her opinion cannot establish a medically determinable impairment. *See* SSR 06-03p. Consequently, the ALJ did not err in not finding Plaintiff disabled under listing 12.02.

Plaintiff also argues that she meets disability listings 12.04 and 12.06 which relate to affective disorders and anxiety related disorders respectively. *Doc. 19* at 9-16. For each of these listings, a claimant must establish certain combinations of impairments to particular levels of severity. 20 C.F.R. pt. 404, Subpt. P, app. 1 § 12.04, 12.06. The Court need not detail the requirements of each listing because, even as presented by Plaintiff, she cannot meet her burden to establish that she falls within either listing without accepting the opinions of Sandra Chavez. *See doc. 19* at 9-16. Unfortunately for Plaintiff, the ALJ rejected the opinions of Sandra Chavez. If that rejection was not somehow improper, then Plaintiff cannot meet her burden at this step.

---

[5] The records and pleadings indicate that Sandra Chavez is an "L.P.A.T." although this licensure designation is explained nowhere.

With respect to opinions from "other sources", an ALJ is simply required to consider them. *Conger*, 453 Fed. App'x at 825. Given the extent of discussion regarding Sandra Chavez' opinions in the ALJ's decision, there can be no dispute that the ALJ did consider them. *See* Tr. at 27, 33 (noting submissions of Sandra Chavez and explaining rejection of the same). While certain factors by which to evaluate such opinions are outlined, the ALJ need not address each factor nor extensively explain the reasons for the weight accorded to an "other source's" opinion. *Conger*, 453 Fed. App'x at 825; *see also* SSR 06-03p ("adjudicator <u>generally</u> should explain the weight given to opinions from these 'other sources.'") (emphasis added). Nonetheless, the ALJ did offer specific explanations for why he declined to heed the opinions of Sandra Chavez. Tr. at 33. As he explained, "the opinion of [Sandra] Chavez is granted little weight as she is not an acceptable medical source, no treatment notes were submitted and she has made a diagnosis that is not otherwise supported by the other evidence of record." *Id*. Each of these bases is an appropriate rationale for according relatively little weight to an opinion. As to point one, the "fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p. As to point two, the lack of treatment notes is relevant on two specified factors – (a) "degree to which the source presents relevant evidence to support an opinion; and (b) "how

well the source explains the opinion." *Id*. As to point three, common sense dictates that the willingness to diagnose an organic mental disorder beyond her expertise reflects poorly on the credibility of her other opinions. It is not the Court's role to reweigh the evidence. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court looks to see if substantial evidence exists to support the decision and whether the decision comports with the proper standards. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). The ALJ's decision to give little weight to Sandra Chavez survives this standard. As such, Plaintiff did not meet her burden to establish that she demonstrated a listed impairment.

*Residual Functional Capacity*

Prior to proceeding to steps four and five, the ALJ set forth his findings as to Plaintiff's Residual Functional Capacity ("RFC"). Tr. at 31. The ALJ stated that Plaintiff "has the [RFC] to perform light work . . . except the [Plaintiff] can perform unskilled work, comprised of simple tasks and dealing with things, rather than people." *Id.* Plaintiff objects to the foregoing because, *inter alia*, she believes that her testimony as well as submissions from Sandra Chavez proved that her abilities were below what the ALJ found.[6] *See doc. 19* at 17-19. The ALJ did not err in discounting this evidence.[7]

---

[6] Objections to the RFC are the only objections touching upon step four of the process. Thus, the Court deals only with the RFC and need not delve into the remainder of the step-four analysis.
[7] The analysis above regarding the reasons the ALJ was not required to accept the questionnaires by Sandra Chavez is equally relevant to the ALJ's refusal to heavily weigh the same in his RFC holding. Thus, in the instant discussion, the Court only addresses the propriety of rejecting Plaintiff's testimony.

Credibility determinations are the province of the ALJ.  *Adams*, 659 F.3d at 1302.  This Court will not upset an ALJ's credibility determinations so long as they are supported by substantial evidence.  *Id.*  The ALJ's decision puts forth several reasons why he did not find Plaintiff's testimony entirely credible.  First, the ALJ found numerous inconsistencies in Plaintiff's testimony and her statements to various medical providers.  Second, the ALJ found inconsistencies between Plaintiff's statements and the objective medical evidence.  Third, the ALJ properly considered her medication and its effectiveness.  Plaintiff provides explanations for these issues in an attempt to reargue the credibility finding.  However, such is not the role of this Court.  The ALJ's credibility findings are linked to substantial evidence and must be affirmed.  Because the primary bases for objecting to the ALJ's RFC findings center around the ALJ refusing to consider testimony and evidence that he found less than credible, the Court cannot find that the ALJ erred in establishing Plaintiff's RFC.

*Step Five*

At step five, the ALJ relied upon the testimony elicited from a VE regarding the availability of work in the national economy to someone with restrictions inherent in Plaintiff's RFC.  Tr. at 34-35.  Plaintiff contends that the ALJ erred because his hypothetical "failed to note a limitation in concentration, although in his 'B' criteria findings he indicated <u>moderate difficulty</u> in concentration, persistence and pace."  *Doc. 19* at 21 (emphasis in original).  Defendant contends that such a limitation was implicit in the hypothetical posed.

"It is well-settled that an ALJ's hypothetical question must accurately reflect all, but only, the limitations borne out by the record."  *Havenar v. Astrue*, 438 Fed. App'x 696, 699 (10th Cir. 2011).  "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

After reviewing the VE's testimony, the Court is not confident that her testimony was based on a complete representation of the impairments found by the ALJ.  The ALJ noted, without contradiction, that a doctor "noted moderate limitations in [Plaintiff's] ability to carry out instructions, to attend and concentrate, to work without supervision, [and] to interact with coworkers and supervisors . . . ."  Tr. at 29.  In fact, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate

difficulties." *Id*. at 31. Nonetheless, the ALJ's hypothetical provided only for a situation in which:

> [The] hypothetical individual were limited to light, exertional-level work as that term is defined within the applicable rulings and regulations and the individual was further limited to unskilled work involving simple tasks and working primarily with things rather than with people . . . [and] also has the claimant's age, education and work history . . . .

*Id*. at 68. The VE responded that such an individual would have work available to her. The ALJ then asked whether a hypothetical individual with the aforementioned limitations, further limited to only be able to have "occasional interaction with both public and coworkers" would have employment available. *Id.* at 69. The VE replied that jobs would still exist for such an individual. *Id.* at 69-70.

Defendant argues that, by limiting the scope of work to "unskilled work," the ALJ's hypothetical takes into account the limitations on Plaintiff's ability to concentrate. Indeed, there is some support for this position. *See Crumb v. Barnhart*, No. 06-1156-JTM, 2007 WL 1223916, at *7-9 (D. Kan. Apr. 11, 2007). However, in this case, the follow-up questions by Plaintiff's counsel make the Court wary about making such an inference. In response to counsel's questions, the VE testified that Plaintiff's inability to "focus on a task for [more than] 15 minutes at a time" would eliminate all the previously described job opportunities. Tr. at 72-73. The Court recognizes that Counsel's hypothetical questions about Plaintiff's concentration difficulties may have exceeded

the ALJ's finding of "moderate" concentration difficulties.[8]  However, without any further discussion of this point by the ALJ, the court cannot be confident that the VE's testimony established that Plaintiff, with the limitations found by the ALJ, could do other work.

Thus, on step five, the Court finds that there was not substantial evidence to support the ALJ's decision and Plaintiff's motion must be granted.

*Remand or Render*

As the statute makes clear, where the Court finds that a Plaintiff is correct in her challenge of the decision of the Commissioner, the Court may either remand the proceeding back to the Social Security Administration or may render judgment.  *See* 42 U.S.C. § 405(g) (noting that judgment of the Court may occur with or without remanding the action).  Although this Court can analyze the evidence below to determine whether the proper standards were applied, it cannot "reweigh the evidence or substitute [its] judgment for [that of] the Commissioner . . . ."  *Martinez v. Astrue*, 422

---

[8] Of course, the ALJ was aware of Counsel's description of Plaintiff's concentration difficulties to the VE. In fact, he even rephrased Counsel's question to get clear testimony on the point from the VE. Tr. at 73. Nonetheless, neither in the hearing nor in his opinion did the ALJ ever reject the particular limitations described by Counsel regarding concentration.  This omission is significant when viewed in contrast with the dispute over crying episodes.  After asking the VE about Plaintiff's concentration difficulties, Counsel also asked whether a person who had "crying episodes on an unpredictable basis" could keep the jobs described by the VE. Tr. at 73-74. The VE testified that one could not. *Id*. at 74. In the ALJ's decision, he expressly finds that the record does not support a finding of any limitation based on crying episodes. Tr. at 35.  This express rejection of the crying episode limitation and the absence of a rejection of Counsel's description of Plaintiff's concentration difficulties could support the inference that the ALJ believed that Counsel's description was in line with his finding of "moderate difficulties" with concentration.

Fed. App'x 719, 726-27 (10th Cir. 2011) (citing *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008)).

In this case, Plaintiff's counsel presented a hypothetical to the VE that added concentration difficulties to the limitations already listed by the ALJ. *See* Tr. at 71-74. At present, however, the Court has no means through which to determine if those limitations were consistent with the "moderate" limitations found by the ALJ. As such, the Court cannot discern from the record what the proper hypothetical to pose to the VE was or what the VE's testimony would have been if the VE had been presented with the ALJ's hypothetical plus the addition of only moderate concentration limitations. Therefore, the Court is unable to render a decision in this matter and must, instead, remand it back to the agency for further consideration.

## *Conclusion*

In analyzing Plaintiff's claims, the ALJ expressly found that Plaintiff has moderate difficulties with concentration. Notwithstanding that finding, the ALJ did not include such a limitation in his hypothetical to the VE. Failing to include the concentration issues in the hypothetical was error and the Court must remand this matter to determine what impact, if any, the inclusion of that factor would have on the ALJ's finding at step five.

Wherefore, IT IS HEREBY ORDERED that Plaintiff's Motion to Reverse or Remand the Administrative Decision, (*doc. 18*), is GRANTED. This action is REMANDED to the Commissioner for proceedings consistent with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**